611 F.2d 818
 John L. MONTGOMERY, D.O., Plaintiff-Appellant,
v.
PROFESSIONAL MUTUAL INSURANCE COMPANY, Defendant-Appellee,
and
The First National Bank in Albuquerque as guardian of the
estate of Paul Anthony Sanchez, an incompetent
minor, and Reina Sanchez, his mother,
Intervenors-Cross-Appellants.
 Nos. 78-2054, 78-2055.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 29, 1979.
Decided Jan. 4, 1980.
 
 David H. Pearlman, Albuquerque, N. M., on brief for appellant.
 James P. Houghton, of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., on brief for appellee.
 William H. Carpenter and Harold B. Albert, Albuquerque, N. M., on brief for cross-appellants.
 Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 The insured under a malpractice policy brought this action against the insurance company, asserting that the company had not defended an action against him. The trial court granted defendant's motion for summary judgment on the ground that the insured had failed to give timely notice of the claim against him, and in any event the policy did not cover the acts of the insured under the circumstances.
 
 
 2
 The undisputed facts show that in April 1973, an operation was performed on Paul Anthony Sanchez in Albuquerque. John L. Montgomery, D.O., the plaintiff herein, and James E. Franklin, D.O., were the doctors in the operating room at the time. A malpractice claim arose from the operation, and a suit was filed in May 1973 naming several defendants, including Dr. Franklin. An amended complaint was filed in May 1974 naming Dr. Montgomery as a defendant. This was served in August 1974. In November 1974 a default judgment was entered against all defendants. Dr. Montgomery had received notice of the default hearing, and apparently was represented by his attorneys. The default was later set aside. In December 1976 Dr. Montgomery called Professional Mutual Insurance Company on the telephone and told them he had been sued. This was the first notice or knowledge from any source that Professional Mutual had received concerning the claim. The claim arose from the operation some three years and eight months before this notice. It was also two years and four months after Dr. Montgomery had been served in the malpractice suit, and some two years after the default judgment. After the default was set aside, the malpractice suit was tried at length and concluded with a jury verdict in October 1977 against the defendants, including Dr. Montgomery. The insurance company knew of the suit, but did not participate nor defend Dr. Montgomery, nor pay any of the expenses of his defense. About nine months elapsed between the telephone notice and the trial of the malpractice suit. The insurance company during the nine-month period had engaged a local attorney to look into the matter, but the company did not participate in the suit in any way.
 
 
 3
 This action by Dr. Montgomery, seeking recovery against Professional Mutual, based on a failure to defend him, was commenced in the state court and removed to the federal court. The insurance company answered and filed a motion for summary judgment with supporting affidavits and other material. The plaintiff filed his own affidavit in response to the motion. This was the only response made to the motion. The trial court granted summary judgment for the defendant insurance company. This order dismissed the complaint of plaintiff and a complaint in intervention filed by The First National Bank in Albuquerque as guardian for Paul Anthony Sanchez. The bank had made no response to the motion for summary judgment.
 
 
 4
 The trial court granted summary judgment on two grounds: First, that there had been a failure by Dr. Montgomery to give timely notice and to cooperate under the policy provisions; and second, that the policy did not cover the insured in the capacity in which he was acting during the operation out of which the malpractice claim arose.
 
 
 5
 We must conclude that there were no unresolved factual issues relating to notice under the policy, or the consequences of a failure to give timely notice. Thus the trial court was correct in granting summary judgment on that ground.
 
 
 6
 It is apparent from the above facts that the time which elapsed from the operation, from the filing of suit against Dr. Franklin, from the service of the complaint naming Dr. Montgomery, and from the default judgment was great, and the events were of critical importance.
 
 
 7
 The policy provided that the company be advised in writing: "Upon the insured becoming aware of any alleged injury covered hereby . . .," and "If claim be made or suit brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received . . . ." The policy also contained a provision that the insured cooperate with the company and not individually assume any obligations or expense.
 
 
 8
 The notice provision is expressed as a condition precedent to the bringing of an action against the company as in the cases of Zengerle v. Commonwealth Insurance Co. of New York, 63 N.M. 454, 321 P.2d 636, with the burden on the insured; Gillum v. Southland Life Insurance Co., 70 N.M. 293, 373 P.2d 536; and Hidden Splendor Mining Co. v. General Insurance Co. of America, 370 F.2d 515 (10th Cir.). In view of the extended periods of time which elapsed between the very significant events following the operation and the first knowledge the company had of the claim, it is clear that the trial court was correct in holding as a matter of law that the notice requirement had not been complied with. Thus again the operation was in 1973, Dr. Montgomery was served with the complaint in August 1974, and in November after notice a default judgment was entered against him. The telephone call to the company was in December 1976. This has to be beyond all periods of reason, and as a matter of law it must be held, if any prejudice need be shown, the lapse of time is so great, and the events of such importance that the combination is sufficient to demonstrate prejudice without more.
 
 
 9
 We have considered our decision in Jennings v. Horace Mann Mutual Insurance Co., 549 F.2d 1364 (10th Cir.), but must conclude that in the case before us there were no facts whatever advanced by the plaintiff relative to the prejudice issue. In Jennings the facts relating to the prejudice contention or defense were fully developed and this was the basis for the decision. Here we have no facts presented by the plaintiff or by anyone else as to prejudice. We have only those demonstrating the inordinate delay and the events taking place during this delay. Also it is obvious, as compared to Jennings, that the litigation here was complicated and depended on expert witnesses and much technical data. See the affidavit of Stockert. Thus the prejudice also appears as a matter of law.
 
 
 10
 There is no issue here of waiver of the notice requirement as it was not raised in the trial court. See Investors Preferred Life Insurance Co. v. Abraham, 375 F.2d 291 (10th Cir.); See also Zengerle v. Commonwealth Insurance Co. of New York, 63 N.M. 454, 321 P.2d 636, and Mountainair Municipal Schools v. United States Fidelity & Guaranty Co., 80 N.M. 761, 461 P.2d 410. As mentioned above, about nine months elapsed between the time the insurance company received the telephone call from Dr. Montgomery and the trial of the malpractice case began. (The default judgment was set aside.) This period of time is not significant, although it is a substantial period, because it came so long after the notice provision was beyond salvage.
 
 
 11
 The intervenor, First National Bank in Albuquerque, has raised the same issues as did the plaintiff. However, we do not consider its arguments because it did not challenge in any way the motion for summary judgment filed in the district court. This was a waiver of objections under the local rules.
 
 
 12
 AFFIRMED.