(719 P.2d 756)

No. 58,075

HOME LIFE INSURANCE COMPANY, *Plaintiff*, v. DEAN C. CLAY, *Defendant*, and FIRST NATIONAL BANK OF HOWARD, *Defendant, Third-Party Plaintiff-Appellant*, v. RELIANCE INSURANCE COMPANY and KANSAS BANKERS SURETY CO., *Third-Party Defendants-Appellees*.

Opinion filed May 29, 1986.

*J. Michael Morris* and *Michael E. McMahon*, of Sargent, Klenda, Haag & Mitchell, of Wichita, for the appellant.

*Bryce A. Abbott* and *William A. Hensley*, of Sherwood & Hensley, of Wichita, and *Keith Witten*, of Sandler, Balkin, Hellman & Weinstein, of Kansas City, Missouri, for appellee Reliance Insurance Company.

*Thomas L. Theis* and *Jeffrey W. Jones*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellee Kansas Bankers Surety Co.

Before PARKS, P.J., RICHARD A. MEDLEY, District Judge, assigned, and ROBERT L. BISHOP, District Judge, assigned.

PARKS, J.: Plaintiff, Home Life Insurance Company (Home Life), filed this action against its former employee, Dean C. Clay, and his bank, First National Bank of Howard (Bank). Home Life alleged that Clay forged endorsements on checks belonging to it and deposited them in his account in the Bank. Recovery was sought from the Bank for conversion premised on K.S.A. 84-3-419. The Bank filed a third-party claim against Reliance Insurance Company (Reliance), its bonding company at the time the checks were deposited, and Kansas Bankers Surety Company (KBS), its bonding company when the suit was filed. Summary judgment was granted to Reliance and KBS and this partial

resolution of the case was certified for appeal under K.S.A.
60-254(b). The Bank appeals from the summary judgment
granted on the third-party claim. No other issue is raised in this
appeal.

The underlying lawsuit initiated by Home Life against the
Bank alleged that its agent Clay forged the insurance company's
endorsement on some $121,000 in checks and deposited them
into his personal account at the Bank. The checks were depos-
ited between October 1979 and April 1980 and the forgeries
were discovered by Home Life in the latter part of May. On June
5, 1980, counsel for Home Life, Thomas Coughlin, and one of its
managers, Fred Liebau, met with the Bank president, Bert
Blackard. There is conflicting testimony concerning the discus-
sion which took place at this meeting which will be set out more
fully later. Blackard contacted the Bank's attorney about the
handling of future transactions with Clay. However, neither
Blackard nor the Bank heard anything further about the forged
transactions until January 14, 1982, when an attorney for Home
Life called and advised Blackard that the Bank was going to be
sued.

Upon service of Home Life's petition against the Bank, notice
was given to both of the Bank's bonding companies, Reliance
and KBS. Each insurer denied coverage and refused to defend
the lawsuit against the Bank. The Bank then filed its third-party
petition against Reliance and KBS. The Bank now appeals from
the partial summary judgment granted in favor of its bond carri-
ers.

Initially, the rules regarding the grant of summary judgment
should be recalled:

"We have stated many times the standards governing the entry of summary
judgment. In *Barnhart v. McKinney*, 235 Kan. 511, 516, 682 P.2d 112 (1984), we
said:

'Summary judgment is proper if no genuine issue of fact remains, giving
the benefit of all inferences which may be drawn from the admitted facts to
the party against whom judgment is sought. *McAlister v. Atlantic Richfield
Co.*, 233 Kan. 252, Syl. ¶ 1, 662 P.2d 1203 (1983). When summary judgment is
challenged on appeal, an appellate court must read the record in the light
most favorable to the party who defended against the motion for summary
judgment. *McAlister*, 233 Kan. 252, Syl. ¶ 4.'

"In *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444
(1985), we said:

'Summary judgment is proper where the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'

"Summary judgment is particularly appropriate where the facts are not disputed and the only questions presented are questions of law. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, 341, 624 P.2d 971 (1981)." *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985).

## I. Propriety of Summary Judgment for KBS

The district court granted summary judgment to KBS because it concluded that KBS' bond did not apply to the Bank's potential loss. The bond states that it applies to loss "discovered" by the insured during the bond period and the period of the bond began in November 1981. Since the court found that the loss was discovered on June 5, 1980, it concluded that KBS' bond was inapplicable. However, the Bank contends that the court erred in reaching its conclusion because the issue of when the loss was discovered by the insured is a disputed question of fact which could not be resolved as a matter of law. The Bank admits that discovery must have taken place either June 5, 1980, when Blackard met with Home Life representatives or January 14, 1982, when Blackard learned that suit against the Bank was being filed. Nevertheless, it contends that the choice of one date rather than the other requires a factual determination which could not be made on a summary judgment motion.

KBS contends and the district court found that the circumstances of Blackard's meeting with Coughlin and Liebau on June 5, 1980, made the Bank aware of facts which constituted discovery of the loss and that a reasonable person could not reach any other conclusion but that summary judgment was proper. However, there is some disagreement between the parties concerning the substance of that meeting. Coughlin testified that it was implicit in his remarks to Blackard that Home Life believed the Bank to be liable for its loss. By contrast, Blackard stated that Coughlin indicated that the Bank might be liable but that Home Life did not intend to file suit. Since the evidence must be viewed in the light most favorable to the Bank, it contends that the testimony that Home Life represented that it would not sue must be accepted as true. In light of this testimony, the Bank contends reasonable minds could differ on whether the loss was "discovered" at the June 5 meeting.

We agree that the controversy concerning the date the loss was discovered could only be resolved by making a factual resolution of disputed testimony. Blackard testified that the Home Life representatives indicated that the company would not be bringing suit against the Bank for fear of adverse publicity. Blackard's characterization of these remarks was not that Home Life was not going to immediately sue or that it would look to the Bank only after it exhausted its remedy against Clay. He testified that Home Life indicated it was not going to sue and this testimony must be believed when considering summary judgment. If Home Life promised not to sue the Bank for its negligence in accepting the forged checks, the Bank would not sustain a loss and it would not have received notice of a potential claim of liability. Thus, it is possible for a reasonable person to find that the Bank did not discover its loss on June 5. Since the parties agreed that discovery took place either June 5 or January 14, 1982, and KBS could be responsible for a loss discovered on the later date, the factual uncertainty about the discovery date should have foreclosed summary judgment in favor of KBS.

II. Propriety of Summary Judgment for Reliance

The summary judgment granted to Reliance was premised on a different set of ultimate facts than that which underlays the summary judgment for KBS. If the loss was discovered on January 14, 1982, then the Reliance bond would not apply since it expired in November 1981. However, if the timing of the discovery of the loss did implicate application of the Reliance bond, summary judgment could still be possible if coverage by the bond were otherwise legally precluded. The district court concluded that assuming that the loss was discovered on June 5, so that the Reliance bond would apply on its face, summary judgment was appropriate because the Bank failed to comply with its obligation under the bond to give notice of its loss as soon as practicable after the loss occurred.

The Bank disputes the conclusion of the court contending first that whether timely notice was given, assuming the loss was discovered on June 5, is a question of fact which could not be resolved as a matter of law. Second, the Bank argues that even if notice could have been found untimely, a second factual issue remains unresolved because there was no evidence that the failure of notice was prejudicial to Reliance.

## A. Untimely Notice

If we assume that the loss was discovered on June 5, 1980, so that Reliance's bond would potentially apply, then according to the terms of the bond, notice should have been given to Reliance "[a]t the earliest practicable moment after discovery of any loss." In this case, notice was not given to Reliance until suit was filed, eighteen months after the June 5 meeting between Blackard and the Home Life representatives. Thus, Reliance argues and the district court held that no reasonable person could find that notice given eighteen months after discovery of a loss was notice at the earliest practicable moment. However, the Bank contends that the finding of untimely notice could not be reached as a matter of law because the test of timeliness is a test of reasonableness which requires a weighing of various facts and circumstances. The Bank contends that circumstances exist in this case which foreclose the conclusion that no reasonable person could find that notice was timely.

The requirements in the banker's blanket bonds that notice be given to the underwriter "as soon as practicable," "as soon as possible" or "at the earliest practicable moment" have all been construed to essentially mean that notice must be reasonably given. 13A Couch on Insurance 2d §§ 49:221-49:223 (rev. ed. 1982). Such an objective test of timeliness necessarily implies that all of the facts and circumstances surrounding the delay must be taken into account and that the issue of timeliness is a factual one. *Travelers Ins. Co. v. Feld Car & Truck Leasing Corp.*, 517 F. Supp. 1132, 1134 (D. Kan. 1981). However, if the circumstances explaining the delay are undisputed and reasonable persons still could not help but conclude that notice was untimely, summary judgment could be properly granted.

In this case, the Bank seeks to justify the eighteen-month delay between June 5 and the notice to Reliance by pointing to (1) the status of the Bank as a small town bank with less experience and expertise than most; (2) the nature of the loss as one which would have to arise as the result of subsequent action by a third party; and (3) the nature of the statements made by Home Life which led to "discovery" of the loss. When these circumstances are considered, the Bank contends that the eighteen-month delay which may alone appear to be unreasonable may be viewed as excusable by a reasonable person.

Without belaboring this issue, we agree with the Bank. There is certainly evidence present to support the conclusion that the Bank's delay in notification was unreasonable; however, such a finding should not be made as a matter of law on a motion for summary judgment. The inferences to be drawn from the circumstances in this case are open to dispute. The eighteen-month delay is certainly lengthy but, according to his testimony, Blackard had been assured that the Bank would not be sued. No money had been lost by the Bank and no prediction could be made that money would be lost until a claim of liability was asserted. Since the existence of a loss depended upon the likelihood that a third party would successfully establish a legal claim against the Bank, it was not immediately ascertainable on the date of discovery. Thus, the timeliness of the notice of loss is not so clearly resolved by undisputed evidence as to justify summary judgment.

B. Prejudice

The Bank also contends that even if the court could have properly concluded that its notice of loss was not given in conformance with the policy, this failing should not relieve Reliance of coverage on its bond since there was no evidence that prejudice resulted from the delayed notice. Reliance counters by arguing that Kansas law does not clearly require such proof of prejudice and that the parties should be held to their contract. Reliance contends that timely notice of loss is a condition precedent to an insured's right to indemnification.

The effect which should be given a failure to provide timely notice of a loss to an insurer or compensated surety is a matter open to considerable disagreement. Annot., 23 A.L.R.2d 1065. Some courts have held that such notice requirements are conditions precedent to the insurer's duty to satisfy a covered loss. *Cf. Union Planters Corp. v. Harwell*, 578 S.W.2d 87 (Tenn. App. 1978) (not condition precedent if not so stated in policy) and *State Bank of Viroqua v. Capitol Indemnity*, 61 Wis. 2d 699, 709, 214 N.W.2d 42 (1974) (condition precedent even if not stated as such in policy). Other courts have held that failure to comply with a notice provision in a fidelity type insurance policy is only fatal to recovery on the policy if the contract expressly provides for forfeiture in the absence of timely notice. *American Nat. Bank & T. Co. v. United States Fid. & G. Co.*, 7 F. Supp. 578

(S.D. Ala. 1934). However, in what is termed the modern trend, a number of jurisdictions have held that an unreasonable delay in giving notice or a failure to give notice will not excuse an insurer's liability unless it can show that it was prejudiced by the delay. Annot., 32 A.L.R.4th 141, 157-67. This latter group of cases appears to assume that the notice requirement is a condition precedent but to conclude that in the context of insurance, failure to satisfy the condition should not automatically excuse performance by the insurer. Kansas is generally cited by the authorities as one of the states following the modern trend largely on the basis of an opinion by Judge Kelly in *Travelers Ins. Co.*, 517 F. Supp. at 1134-36, and the old Kansas case, *School District v. McCurley*, 92 Kan. 53, 142 Pac. 1077 (1914). See Annot., 32 A.L.R.4th 141, 161; 13A Couch on Insurance 2d § 49:238.

In *Travelers Ins. Co.*, the court was concerned with a claim of contribution by one insurer against another for liability assumed under an automobile liability policy. The defendant insurer sought to deny liability on the grounds that it did not receive notice after the accident giving rise to liability as soon as practicable. The defendant's policy specifically provided that no action would lie against the company unless, as a condition precedent to liability, the insured complied with provisions of the policy which included the notice provision. Nevertheless, the federal district court after extensively reviewing the authority from other jurisdictions concluded that the Kansas Supreme Court would adopt a rule requiring the defendant insurer to prove prejudice resulting from tardy notice before liability could be avoided.

In a subsequent federal court decision by Judge O'Connor, it was held that notice given an insurer was untimely and that the untimeliness was prejudicial so that the surety was relieved of its obligation on the bond. *Sec. Nat. Bank of Kansas City v. Continental Ins.*, 586 F. Supp. 139, 148-50 (D. Kan. 1982). However, the court also reviewed the Kansas law and concluded that Kansas accepts the view that prejudice is not presumed by a delay in notice and that the insurer must demonstrate substantial prejudice before it may be relieved of liability.

Reliance contends that these two federal cases merely seek to predict the Kansas law and that the state authority is ambiguous.

However, in *School District v. McCurley*, 92 Kan. 53, the court considered the requirement in a contractor's bond that notice of default be given the surety. The court viewed the notice provision as a condition precedent but concluded that the insurer would not be relieved of liability on the bond unless the breach of the condition contributed to the loss or resulted in prejudice. *McCurley* was followed a year later in *Republic County v. Guaranty Co.*, 96 Kan. 255, 258, 150 Pac. 590 (1915), where the court stated as follows:

"The legal status of a surety company like the defendant is well defined in this state. It is an insurer for pay and does not occupy the position of the ordinary surety, who voluntarily undertakes to make good the default of his principal. The bonds which it dictates to those in need of them are to be interpreted to accomplish indemnity against loss sustained. Notice of default and notice of final payment are not cast-iron conditions precedent to liability, but are reasonable reservations made to afford the insurer an opportunity to protect itself against loss should it need and should it be able to do so. If no notice be given but no loss result as a direct consequence, liability is not affected. Actual damage resulting from failure to give notice must be pleaded and proved as a defense." 96 Kan. at 258.

More recently, *McCurley* was relied on in *Local No. 1179 v. Merchants Mutual Bonding Co.*, 228 Kan. 226, 230, 613 P.2d 944 (1980). In *Local No. 1179*, an employee union sought to collect on a surety bond arranged by an employer association for the purpose of securing the payment of wages by its member employers. One of the employer members of the association defaulted on its obligation to pay its employees and the union filed a claim with the surety six months later. The surety sought to escape liability on the ground that notice did not comply with the policy provision which stated that the obligee (the union) on the bond would give notice within 30 days after obtaining knowledge of the default. The court noted that the bond did not provide a penalty for failure to give prompt notice and concluded that the surety was not entitled to discharge on its bond. Although the court stated that it agreed with the district court's conclusion that there was substantial compliance with the notice requirement, the notice was characterized as having been given six months after the date knowledge of the default was obtained. The court could not have concluded that notice was timely. Therefore, the significance of *Local No. 1179* is that despite a failure to comply with a notice provision, the court refused to

excuse the surety when there was no evidence that the surety was prejudiced by the untimely notice.

There are a number of other older cases cited by Reliance in which the effect of untimely notice is touched upon. However, the cases in which untimely notice was permitted to defeat a claim for liability involve situations in which prejudice could be assumed from the type of insurance and notice required (*Mayse v. Insurance Co.*, 117 Kan 662, 232 Pac. 865 [1925] [hail damage to crop must be immediately assessed because likelihood other causes can result in same damage; delay presumed prejudicial]), or in which the issue of prejudice was not discussed in the opinion. *La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P.2d 354 (1932). For example, in *La Harpe*, the court held that a provision in a bank's fidelity bond requiring notice of loss as soon as possible was a valid provision. However, the court went on to hold that there were insufficient averments in the petition to bring the loss within the coverage provided by the bond in the first place. Thus, disposal of the case by demurrer was upheld without consideration of whether the absence of timely notice was alone sufficient to defeat liability. Finally, it might also be noted that the situation in *La Harpe* was one in which the loss was occasioned by the dishonesty of a bank employee. By failing to give timely notice to the surety after discovery of the loss, the surety's recourse against the dishonest employee might have presumptively been prejudiced. This is a different situation than that which arises when the insurer will be in the position of defending against the claim of a third party instead of that of its own insured. When the insured sustains a direct loss, the insurer's only recourse is against the thief. However, when the loss will result from liability owed a third party, the insurer is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay.

In this case, like *Local No. 1179*, the bond does not indicate a penalty for late notice or specifically state that the insurer's liability is conditioned on timely notice. However, even if such notice is presumed to be a condition precedent, *McCurley* and *Travelers Ins. Co.* indicate that a failure to satisfy the condition does not bar coverage unless the insurer can show prejudice. Therefore, bearing in mind the precedent represented by *McCurley* and the reasoning expressed in *Travelers Ins. Co.*, we conclude that a failure to provide a compensated surety with

timely notice of loss will not relieve the surety from liability on its bond unless the surety can show that it was prejudiced by the untimeliness.

Since the issue of prejudice was not addressed by the facts agreed to by the parties, summary judgment could not be entered. In light of our conclusion that material factual issues remained unresolved on issues relating to both KBS' and Reliance's bonds, summary judgment was erroneously granted to both third-party defendants.

Reversed and remanded for trial.