Steven HUNT, Plaintiff,

v.

KLING MOTOR COMPANY,
et al., Defendants,

Universal Underwriters Insurance
Company, Garnishee.

Civ. A. No. 92–2060–EEO.

United States District Court,
D. Kansas.

Dec. 15, 1993.

Memorandum Denying Motion to
Alter or Amend Jan. 19, 1994.

M. Joan Klosterman, James C. Morrow, Gordon N. Myerson, Daniel T. DeFeo, Timothy W. Monsees, Gary J. Willnauer, Myerson, Monsees & Morrow, Brian J. Amick, Kansas City, MO, for plaintiff.

Michael J. Grady, Gage & Tucker, Overland Park, KS, for defendants.

Patrick K. McMonigle, Howard D. Lay, Matthew B. Moore, Dysart, Taylor, Penner, Lay & Lewandoski, Kansas City, MO, for garnishee Universal Underwriters Ins. Co.

### *MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

In this action, plaintiff, judgment creditor, Steven Hunt, seeks to attach by garnishment a debt he claims is owed by garnishee Universal Underwriters Insurance Co. ("Universal") to its alleged insured, defendant Kling Motor Company ("Kling Motor"). This matter is before the court on the motion for summary judgment filed by garnishee Universal Underwriters Insurance Co. (Doc. # 118) and on the summary judgment motion filed by plaintiff Steven Hunt (Doc. # 106).

*Law Governing Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. An issue is "material" only when the controversy is over facts that might affect the outcome of the suit under the governing law. *Id.*

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Where

the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 206(c).

*Uncontroverted Facts*

The material uncontroverted facts established by the parties in accordance with District of Kansas Rule 206(c) are as follows:

On February 10, 1992, plaintiff Steven Hunt filed a complaint against defendant Kling Motor in the United States District Court for the District of Kansas. Summons was issued for said defendant on May 26, 1992. Kling Motor was served with the summons and complaint on May 29, 1992. Kling Motor never filed an answer or otherwise pled to plaintiff's complaint. Default judgment was finally entered against Kling Motor on July 15, 1992.

On August 14, 1992, plaintiff's counsel mailed a letter to Universal, the alleged insurance carrier for Kling Motor, advising Universal that Kling Motor had been named as a defendant in a lawsuit, that a default judgment had been entered in the case, that the plaintiff would be looking to Kling Motor's insurers to satisfy any monetary judgment entered against Kling Motor. The letter further advised Universal that a hearing was scheduled for September 4, 1992, to determine the amount of damages to be awarded plaintiff against Kling Motor.

On September 4, 1992, this court held a hearing, and awarded damages to plaintiff against Kling Motor in the amount of $1,052,-290.70. At the hearing, no one appeared on behalf of Kling Motor.

On October 28, 1992, plaintiff served Universal with an order of garnishment. On November 4, 1992, Universal timely filed an answer to the garnishment order, denying that it owed anything to Kling Motor. Plaintiff now claims that Universal wrongfully denied coverage and that plaintiff is entitled to recover against Universal.

It is undisputed that the first notice Universal received regarding plaintiff's claim against Kling Motor was the August 14, 1992, letter from plaintiff's attorney, and that Uni-

versal never received notice of the lawsuit from Kling Motor, its insured. The Universal policy that plaintiff claims afforded coverage to Kling Motor provides:

> INSURED'S DUTIES AFTER INJURY, OCCURRENCE, CLAIM OR SUIT—If there is an OCCURRENCE, the INSURED is sued, or a claim is made against an INSURED:
>
> 1. Report this to US as soon as possible. Give US all the details YOU can, including where and how it happened, the names and addresses of persons involved, injured, and any witnesses.
>
> 2. Promptly send US all documents if any INSURED is sued or a claim is made against them.
>
> 3. Cooperate and assist US in the investigation, settlement, defense, enforcement of contribution or indemnification. The INSURED may not, except at their own expense, make any offer or payment, assume any obligation or incur any expense unless otherwise permitted in this Coverage Part.

"YOU" is defined in the policy as "the insured."

### Discussion

Plaintiff claims he is entitled to garnish Universal because Universal owes money to Kling Motor. Universal denies it owes Kling Motor anything and advances three arguments in support of its motion for summary judgment:

(1) Universal's policy provides no coverage for the type of claims plaintiff asserts in the lawsuit;

(2) Even if there were coverage for the types of claims plaintiff asserts, Universal's coverage was not in force at the time because it was a "claims-made" policy and not an "occurrence-based" policy, and no claim was made within the policy period;

(3) No coverage exists because Universal has been substantially prejudiced by Kling Motor's breach of the insurance policy's provisions requiring the insured to give timely notice to the insurer of any claim, lawsuit, or occurrence.

Because we believe Universal's third argument controls the disposition of this case, we turn now to an examination of the claim that, because Universal has been substantially prejudiced by Kling Motor's failure to give Universal timely notice of this lawsuit, Universal owes nothing to Kling Motor and, therefore, is entitled to judgment as a matter of law.

■ It is well settled that in garnishment proceedings, the judgment creditor takes the place and stands in the shoes of the judgment debtor. *Williams v. Community Drive-In Theatre, Inc.,* 3 Kan.App.2d 352, 353, 595 P.2d 724, 725 (1979). All defenses which a garnishee would be able to assert against the judgment debtor can be asserted against the garnishor. *Id.*

Three different rules have evolved among the jurisdictions regarding whether an insurer need demonstrate prejudice in order to escape liability because of an insured's failure or delay in giving notice of an accident or claim, or in forwarding suit papers. In *Security National Bank v. Continental Insurance Co.,* 586 F.Supp. 139, 150 (D.Kan.1982), we identified the rule adopted and followed in Kansas:

> In *Jennings v. Horace Mann Mutual Insurance Co.,* 549 F.2d 1364, 1367 (10th Cir.1977), the court discussed the three different approaches courts have taken with respect to prejudice resulting from the failure to notify the insurer of an accident or loss in a timely fashion. The first is that prejudice is immaterial, and that failure to give timely notice results automatically in loss of coverage; the second view is that an unreasonably late notice raises a presumption of prejudice to the insurer and the insured has the burden of showing lack of prejudice; and the third view presumes no prejudice results and places the burden on the insurer to demonstrate substantial prejudice before it may be relieved of liability. From our study of the Kansas cases, we believe that Kansas accepts the third approach ...

*Id.* at 150. *See also Travelers Ins. Co. v. Feld Car & Truck Leasing Corp.,* 517 F.Supp. 1132 (D.Kan.1981). *See generally* Charles G. Marvel, Annotation, *Modern Sta-*

*tus of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers,* 32 A.L.R.4th 141, 161 (1984); 13A *Couch on Insurance 2d* (rev. ed.) § 49:238.

■ Whether an insurer is prejudiced when the insured fails to give timely notice is determined by the court as a matter of law. *Security National Bank,* 586 F.Supp. at 150; *Montgomery, D.O. v. Professional Mutual Insurance Company,* 611 F.2d 818, 820 (10th Cir.1980).

■ In *Security National Bank,* the court held that the bank's failure to give timely notice to its insurer of its losses arising from a check kiting scheme resulted in prejudice to the insurer. There, the insurance policy required the insured to give written notice to the insurer "at the earliest practicable moment after discovery of any loss." Security National Bank ("SNB") discovered the check kiting scheme on January 2, 1977. SNB argued that notification to the surety by letter dated January 19, 1977, was at the earliest practicable moment after the discovery. In the interim, and despite knowledge of the check kiting scheme, SNB accepted and cleared for deposit to an account of the company involved in the scheme several checks, totalling $167,129.99. In reaching its decision, the court stated:

> The acceptance of the Overland Park State Bank checks, after discovery of the [check kiting] scheme but before notification of the surety, prejudiced the defendant by SNB's voluntarily increasing the loss sustained.

> \*　\*　\*　\*　\*　\*

> [W]e find that plaintiff's notice at least seventeen days after the discovery of the loss was clearly not notice "at the earliest practicable moment" as to the checks returned by Overland Park State Bank, and debited against the account on January 7, constituting roughly $167,000 of the loss. This delay clearly resulted in prejudice to the surety, as SNB actually increased its

loss by paying checks it was not legally obligated to pay.

586 F.Supp. at 145, 148.

In *Montgomery,* Dr. Montgomery, the insured under a malpractice policy, sued Professional Mutual Insurance Company for failure to defend a malpractice action against him. The relevant undisputed facts were as follows: In April 1973, Dr. Montgomery participated in a medical operation performed on Paul Sanchez. In May 1973, Sanchez filed a medical malpractice action. In May 1974, the plaintiff amended the complaint to name Dr. Montgomery as a defendant; in August 1974, Dr. Montgomery was served with process. In November 1974, a default judgment was entered against all defendants. Dr. Montgomery had received notice of the default hearing, and apparently was represented by his attorneys. The default judgment was later set aside. Over two years later, in December 1976, Dr. Montgomery called Professional Mutual Insurance Company on the telephone and told them he had been sued. This was the first notice or knowledge Professional Mutual had received from any source concerning the claim. After the default judgment was set aside, the malpractice suit was tried, and in October 1977 a jury verdict was entered against the defendants, including Dr. Montgomery. Professional Mutual Insurance Company knew of the suit and had engaged a local attorney to look into the matter, but neither defended Dr. Montgomery, nor paid any of the expenses of his defense.

Dr. Montgomery subsequently filed suit against Professional Mutual for its failure to defend and indemnify him. Professional Mutual moved for summary judgment on the ground that Dr. Montgomery had failed to give timely notice and had failed to cooperate under the policy provisions. The trial court granted summary judgment in favor of Professional Mutual. In affirming the trial court, the Tenth Circuit observed that Dr. Montgomery notified his insurance carrier of the malpractice suit some two years and four months after he had been served, and some two years after the default judgment. The court concluded:

In view of the extended periods of time which elapsed between the very significant events following the operation and the first knowledge the [insurance] company had of the claim, it is clear that the trial court was correct in holding as a matter of law that the notice requirement had not been complied with. Thus again the operation was in 1973, Dr. Montgomery was served with the complaint in August 1974, and in November after notice a default judgment was entered against him. The telephone call to the company was in December 1976. This has to be beyond all periods of reason, and as a matter of law it must be held, if any prejudice need be shown, the lapse of time is so great, and the events of such importance that the combination is sufficient to demonstrate prejudice without more.

*Montgomery*, 611 F.2d at 819. The court also observed that even though there were no facts presented by either party demonstrating prejudice, prejudice was demonstrated as a matter of law simply by the inordinate delay and the events taking place during the delay. *Id.* at 820.

In the instant case, it is uncontroverted that Universal did not receive any notice from its insured, Kling Motor. Actually, it did not receive any notice of the lawsuit against Kling Motor until the letter from plaintiff's attorney saying that a default judgment had been entered against Kling Motor, and that plaintiff would be seeking satisfaction of the judgment from Universal. Universal received the letter from plaintiff's attorney shortly after August 14, 1992, four weeks after default judgment had been entered. Kling Motor had been served with the summons and complaint on May 29, 1992, ten weeks before Universal received notice of the claim.

Universal contends that it has been substantially prejudiced by the delay in the following ways:

A. Liability was determined, all affirmative defenses were waived and a claim was reduced to default judgment without notice to Universal;

B. Universal was prevented from conducting any type of investigation, either contemporaneous or otherwise, of witnesses of the alleged 1988 manufacturing problems or the alleged mechanical conditions of the tractors;

C. Universal's ability to analyze the claim and determine what management approach it would adopt to resolve the claim was eliminated;

D. Without the ability to analyze the claim, Universal was precluded from undertaking any arms length negotiations and/or settlement discussions *regardless of whether coverage existed under Universal's policy for the alleged problems;*

E. Universal's opportunity for preparation and preservation of demonstrative or illustrative evidence of the alleged problems giving rise to this incident was eliminated.

(Universal's Brief, pp. 16–17, emphasis in original.)

In support of its position, Universal relies upon *Home Life Insurance Co. v. Clay*, 11 Kan.App.2d 280, 719 P.2d 756, *rev. denied*, 239 Kan. 693 (1986). There, the court discussed the circumstances under which an insurer is prejudiced by delay in receiving notice of a loss. The court noted:

> [W]hen the loss will result from liability owed a third party, the insurer is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay.

*Id.*, 11 Kan.App.2d at 288, 719 P.2d 756, 762–63.

Universal was substantially prejudiced by Kling Motor's breach of its duty to timely notify Universal of any claim. By the time Universal was notified of the claim, liability had been determined and the claim had been reduced to a default judgment. Universal was precluded from asserting any affirmative defenses. Furthermore, the untimely notice prevented Universal from conducting any investigation into the alleged mechanical conditions of the tractors. Universal lost the opportunity to preserve any evidence of the alleged problems with the tractors. The late notice also eliminated Universal's ability to analyze the claim and determine what management approach it would adopt to resolve

the claim; without the ability to analyze the claim, Universal was precluded from undertaking any arms-length negotiations or settlement discussions regardless of whether coverage existed under the Universal policy. Clearly, the fact that Universal did not receive notice until after liability was determined and default judgment was entered against Kling Motor denied Universal the ability to defend Kling Motor against the imposition of liability. Universal was substantially prejudiced by the untimely notice.

Plaintiff argues that Universal was not prejudiced because it received notice before the court assessed damages in the amount of $1,052,290.70. Specifically, plaintiff contends that Universal could have appeared at the September 4 hearing and contested damages, petitioned this court to set aside the default judgment of July 15, 1992, pursuant to Federal Rule of Civil Procedure 55(c), or taken a direct appeal of the default judgment pursuant to Federal Rule of Civil Procedure 60(b).

Plaintiff urges that an insurer's failure to pursue the foregoing remedies "have [sic] been held to obviate an insurer's claimed prejudice." In support of this statement, plaintiff relies on three Michigan cases, *Upjohn Co. v. Aetna Casualty and Surety Co.*, 768 F.Supp. 1186 (W.D.Mich.1990), *Burgess v. American Fidelity Fire Insurance Co.*, 107 Mich.App. 625, 310 N.W.2d 23 (1981), and *Wendel v. Swanberg*, 384 Mich. 468, 185 N.W.2d 348 (1971). Plaintiff quotes the following passage in *Upjohn* to support his argument:

> The insurance carrier will not be permitted to benefit by sitting idly by, knowing of the litigation, and watch its insured become prejudiced [See, *Wendel v. Swanberg, supra.*] .... [P]rejudice [to the insurer] does not become material where the carrier, upon notice, does not act or properly act to protect its interest or that of its insured. Such prejudice was not attributable, in the ultimate sense, to the insured's failure to give notice of suit, but rather to the insurance carrier's failure to act upon receiving notice.

768 F.Supp. at 1207 (quoting *Burgess,* 310 N.W.2d at 25, citing *Wendel,* 185 N.W.2d 348 (1971)).

After careful examination of these cases, we find them not persuasive. We believe that both *Upjohn* and *Burgess* took the above quotation out of context from the facts of *Wendel.* The facts in *Wendel* are distinguishable from the facts in the instant case. There, the insurer received notice of the accident itself within four months of its occurrence. The insurer conducted an investigation and made a settlement offer to the injured party before suit was even filed. In *Burgess,* too, the insurance company had notice of the accident prior to the filing of the lawsuit.

Far more persuasive in our view is the analysis in *Kimble v. Aetna Casualty and Surety Co.,* 767 S.W.2d 846 (Tex.Ct.App. 1989), and *Reisman v. Delgado,* 117 Ill. App.3d 331, 73 Ill.Dec. 77, 453 N.E.2d 902 (1983). In *Kimble,* the insured notified his insurance carrier of a lawsuit after default judgment but before the time had expired for filing a motion for new trial. The carrier did not seek to have the judgment set aside. The court held that prejudice resulted to the insurer by the change in its position brought about by the insured's failure to forward the suit papers until after default judgment had been rendered. Prejudice resulted even though the option to file a motion for new trial was still available to the insurer. *Kimble,* 767 S.W.2d at 851. The court reasoned:

> [Kimble] conceded that appellee Aetna did not receive notice prior to entry of the default judgment. Rather, [Kimble] focused their argument upon the question as to whether or not appellee Aetna was sufficiently prejudiced by its lack of notice to entitle it to deny policy coverage. In particular, [Kimble] argued, since [Aetna] admittedly received notice of that default judgment prior to the time it became final, [Aetna] could have taken some action to have it set aside. Since [Aetna] took no such action, [Kimble] posited, the requisite prejudice to [Aetna] was not shown.

> \* \* \* \* \* \*

> It seems clear that [Aetna], by virtue of the default judgment, has been substantially prejudiced by that change in position. Moreover, under the facts of this case, it is

by no means certain that [Aetna], standing in the shoes of its insured, could have established its entitlement to a new trial. If it was unable to have the default judgment set aside, the prejudice suffered by [Aetna] is obvious.

*Id.*

In *Reisman,* the court held:

An insurer is prejudiced when it does not receive notice of a lawsuit until after entry of a default judgment because, in such cases, it "did not have an opportunity to appear and defend the action on liability, was not given an opportunity to cross-examine plaintiffs' witnesses on damages and was not given an opportunity to present its own evidence relative to liability and damages." (Citation omitted.)

The plaintiffs [judgment creditors] nevertheless argue Coronet [the insurer] was not prejudiced because it obtained notice of their action within time to seek post-judgment relief ... However, the judgment entered against Delgado appears to be valid, and the plaintiffs fail to show there is good cause for granting relief from this judgment ...

We hold the manifest weight of the evidence establishes that Coronet suffered substantial prejudice from breach of the notice-of-suit provision.

453 N.E.2d at 905–06.

Here, there is absolutely no showing that Kling Motor, or Universal standing in the shoes of its insured, would have been able to set aside the default judgment which appears to be valid in all respects. In fact, we are not convinced that good cause could have been shown for the grant of any relief from the judgment. Kling Motor was served with a summons that clearly required it to file its answer or otherwise plead to plaintiff's complaint on or before June 18, 1992. Kling Motor's failure to answer or otherwise plead appears on its face to be intentional or the result of Kling Motor's conscious indifference to this court's authority. Indeed, Kling Motor presumably received notice of the hearing on damages and failed to appear.

Under the circumstances and for the reasons discussed, we hold that Universal was substantially prejudiced when it did not receive notice of the lawsuit until after entry of the default judgment. Universal is therefore entitled to summary judgment.

IT IS THEREFORE ORDERED that garnishee Universal Underwriters Insurance Co.'s motion for summary judgment (Doc. # 118) is granted.

IT IS FURTHER ORDERED that plaintiff Steven Hunt's motion for summary judgment (Doc. # 106) is denied.

### MEMORANDUM AND ORDER ON MOTION TO ALTER OR AMEND

This matter is before the court on plaintiff Steven Hunt's motion to alter or amend judgment (Doc. # 124). On December 15, 1993, this court entered a memorandum and order (Doc. # 122) granting garnishee Universal's motion for summary judgment and denying plaintiff's motion for summary judgment. The court determined Universal had been substantially prejudiced by Kling Motor's failure to give Universal timely notice of the lawsuit and therefore Universal was entitled to judgment as a matter of law.

The central contention in plaintiff's motion to alter or amend judgment is that the court has "failed to distinguish between a default judgment and [an] entry of default."

Federal Rule of Civil Procedure 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

Plaintiff's assertion that "[this] court would have automatically set aside the entry of default if Garnishee would have availed itself of the opportunity to file a Rule 55(c) Motion" is quite presumptuous.

The principal factors to be considered in determining whether the defendant has met the good cause standard of Rule 55(c) in a motion to set aside an entry of default are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3)

whether the defendant has presented a meritorious defense to plaintiff's claim. The court must also balance the interests of the defendant in the adjudication of the case on the merits, against the interests of the public and the court in the orderly and timely administration of justice. . . .

. . . Clearly, however, the court may refuse to set aside a default, where the defaulting party has no meritorious defense, where the default is due to willfulness or bad faith, or where the defendant offers no excuse at all for the default.

6 Jeremy C. Moore, et al., *Moore's Federal Practice* ¶ 55.10[2] (2d ed. 1993).

■ Rule 55(c) requires good cause to be demonstrated in order for the court to exercise its discretion to set aside an entry of default. Here, there is absolutely no evidence demonstrating that good cause existed warranting the court to set aside its entry of default.

Plaintiff filed his complaint against Kling Motor on February 10, 1992, and initiated service on the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Plaintiff's Suggestions in Support of Motion for Default Judgment Against Separate Defendant Kling Motor, Doc. # 18, p. 1). Kling Motor failed to acknowledge service under Rule 4. Plaintiff then requested the Sheriff of Cloud County, Kansas, to serve the defendant personally, and Kling Motor was personally served by Sheriff Dean Cairns on May 29, 1992. (Doc. # 18). Kling Motor was on notice by the summons that failure to answer within twenty days would result in an entry of default judgment. The summons specifically stated:

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon PLAINTIFF'S ATTORNEY Daniel T. DeFeo 1310 Carondelet Drive, Suite 400 Kansas City, MO 64114 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Kling Motor was aware, from the copy of the complaint attached to the summons, that plaintiff was seeking damages against Kling Motor in excess of $50,000 on each of the four counts in plaintiff's complaint. Kling Motor never filed an answer or otherwise pled to plaintiff's complaint. Plaintiff mailed Kling Motor his Demand for Jury Trial on June 18, 1992. (Doc. # 16).

There is no evidence before the court demonstrating that Kling Motor did not have actual knowledge of the complaint filed against it. Based upon the record before us, we conclude that Kling Motor's failure to answer was willful and demonstrated a flagrant disregard for the authority of the court. Indeed, to date, Kling Motor has not taken any steps to seek relief from the court's judgment. This failure to act again evidences Kling Motor's willful indifference to the court's authority.

The majority of courts hold that a defendant's conduct will be considered culpable only if the defendant has defaulted willfully, or has no excuse for the default. *See, e.g., EEOC v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524 (11th Cir.1990) (denial of motion to vacate default affirmed where defendant offered no meaningful reason for its having defaulted); *Park Corp. v. Lexington Ins. Co.,* 812 F.2d 894 (4th Cir.1987) (where the defendant did not offer any excuse at all for lapsing into default other than that the complaint disappeared from the file, the existence of a meritorious defense was insufficient to warrant relief from a default judgment); *Walker v. Tilley Lamp Co.,* 467 F.2d 219 (3d Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 132 (1972) (no excuse for default); *Associated Press v. J.B. Broadcasting,* 54 F.R.D. 563 (D.Md.1972) (no excuse offered for failure to refer suit to counsel). A defendant's conduct has been determined to be "culpable" if he has received actual or constructive notice of the filing of the action and failed to answer. *Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir.1985). *See also Admiral Home Appliances, a Div. of Magic Chef, Inc. v. Tenavision, Inc.,* 585 F.Supp. 14 (D.C.N.J. 1982) (Corporation was on full notice of service of summons and complaint in a breach-of-contract action and its failure to timely

transmit the documents to its attorneys for response was not a matter of mistake or inadvertence but of arrogance and disregard of potential consequences and, hence, no good cause was shown for setting aside the default.).

If the default was the result of culpable conduct on the part of the defendant, the court need not consider anything else in refusing to set aside the default judgment. *Meadows v. The Dominican Republic,* 817 F.2d 517, 522 (9th Cir.1987); *Pena v. Seguros Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir.1985). There are no facts before us that would even remotely suggest good cause exists to set aside our entry of default.

The court has a strong preference for the disposition of litigation on the merits rather than by default; however, litigation on the merits is not what plaintiff seeks nor is it what Kling Motor seeks. Kling Motor has not sought any type of relief whatsoever from this court's judgment. There is no evidence before the court to suggest that Universal was requested to furnish counsel to defend Kling Motor in this action. Consequently, plaintiff's reliance upon *Henry v. Johnson,* 191 Kan. 369, 381 P.2d 538 (1963), is misplaced. In *Henry,* the insured notified his insurer and requested the insurer to defend the claims against him. In this case, however, there is no evidence that Kling Motor notified Universal or requested Universal to defend it.

IT IS THEREFORE ORDERED that plaintiff's motion to alter or amend judgment (Doc. # 124) is denied.