(961 P.2d 1240)

No. 77,325

ALAN D. CREEK and REBECCA CREEK, *Appellants*, v. HARDER CONSTRUCTION, INC., *Defendant*, and MARYLAND CASUALTY COMPANY, *Garnishee/Appellee*.

Opinion filed June 26, 1998.

*Karl Kuckelman* and *Brian C. Behrens*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellants.

*Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for garnishee/appellee.

Before GREEN, P.J., ELLIOTT, J., and JANICE D. RUSSELL, District Judge, assigned.

GREEN, J.: Alan D. Creek and Rebecca Creek appeal from a judgment of the trial court denying their garnishment against the garnishee, Maryland Casualty Company (Maryland Casualty). The Creeks maintain that Maryland Casualty was required to pay a judgment previously entered against its insured, Harder Construction, Inc. (Harder). The Creeks argue that the trial court erred in determining that Maryland Casualty was relieved from liability because of Harder's noncooperation. We disagree and affirm.

The Creeks entered into a contract with Harder for the construction and sale of a new home. Badger Roofing, a subcontractor, installed the roof. On September 8, 1987, the Creeks purchased

the finished house from Harder. Scott Harder, Harder's previous owner, testified that the Creeks experienced some problems with the roof early in their occupancy and that Badger Roofing made repairs. However, after a big storm in May 1990, the roof leaked, causing interior damage. In September 1990, the Creeks sued Harder for breach of contract, negligence, and defective construction.

On May 31, 1991, the Creeks were granted a default judgment in the amount of $10,350.25. During a debtor's examination held in August 1991, the Creeks discovered that Harder had a comprehensive general liability insurance policy with Maryland Casualty. The policy was in effect from February 1, 1987, to February 1, 1988. On August 5, 1991, counsel for the Creeks notified Maryland Casualty of the claim, suit, and judgment. In response, on August 16, 1991, Maryland Casualty mailed two letters to Harder, a reservation of rights and defenses under the policy and a letter requesting information about the claim and loss. On December 10, 1991, Maryland Casualty mailed a second reservation of rights letter. Scott Harder testified that Harder received the three letters but did not respond to them.

On August 20, 1991, the Creeks offered to set aside the default judgment and to have a trial on the merits. Maryland Casualty declined the offer, contending that it had already been prejudiced by breach of several policy provisions, including those requiring notice and cooperation. Next, the Creeks initiated the instant garnishment action against Maryland Casualty to recover the amount of the default judgment. Maryland Casualty denied that it owed any debt to Harder, and both parties filed motions for summary judgment. The trial court granted the Creeks partial summary judgment on the issue of policy coverage but denied the parties' motions on the issue of Maryland Casualty's liability, finding that there were material questions of fact as to the policy defenses asserted by Maryland Casualty. After an evidentiary hearing, the trial court concluded that Maryland Casualty had been prejudiced by Harder's failure to provide notice of the claim and of the corresponding suit, and by Harder's failure to cooperate.

The Creeks first argue that the trial court's judgment regarding Harder's breach of the notice provision of the insurance policy is not supported by substantial competent evidence. Our standard of review of the trial court's findings of fact and conclusions of law is well settled:

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]

"In reviewing the decision of a trial court, this court must accept as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court, and must disregard any conflicting evidence or other inferences that might be drawn therefrom. [Citation omitted.] Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. K.S.A. 60-252(a)." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377-78, 855 P.2d 929 (1993).

The insurance policy between Harder and Maryland Casualty required Harder's cooperation as a condition precedent to the payment of any claims by Maryland Casualty. "The purpose of cooperation clauses is to protect the insurer's interest and prevent collusion between the insured and the injured person." *Watson v. Jones*, 227 Kan. 862, 866-67, 610 P.2d 619 (1980).

The notice provision of the insurance policy stated:

"4. Insured's Duties in the Event of Occurrence, Claim or Suit.

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

. . . .

"5. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to

pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

The trial court ruled that Harder had violated the above contractual provisions and that such violations had caused Maryland Casualty "substantial prejudice." The trial court stated:

"12. [Harder] violated conditions 4(a) [and] (b) . . . by never notifying [Maryland Casualty] of the loss, never notifying [Maryland Casualty] of the lawsuit, and by failing to cooperate with [Maryland Casualty] regarding the lawsuit.

"13. [Maryland Casualty's] first notice of the loss, lawsuit or judgment was on August 5, 1991, when it received a general liability loss notice . . . . Even this notice of the judgment was not provided by [Harder]. Rather, it was provided by [the Creeks'] counsel to [Harder's] insurance agent who forwarded it to [Maryland Casualty].

"14. Following notice of the judgment, [Maryland Casualty] made efforts to contact its insured; Harder's deposition testimony reveals that he received the letters from [Maryland Casualty] and simply disregarded them.

"15. Due to the lack of notice of the claim and suit, [Maryland Casualty] was substantially prejudiced by the time it first learned of the default judgment on August 5, 1991. [Maryland Casualty] lost the opportunity to conduct its own investigation of the loss, to appraise the damages, and to determine responsibility for the damages. [Maryland Casualty] was not able to determine what, if anything, met the definition of property damage within its insurance policy as compared to what was merely defective construction, which would not be covered under its policy. By the time [Maryland Casualty] first learned of this loss, approximately 15 months had passed since the loss occurred.

. . . .

"18. [Maryland Casualty] has the burden of proof to establish its defense of lack of notice of claim, lack of notice of suit, and lack of cooperation.

"19. [Maryland Casualty] has sustained its burden of proof to establish by a preponderance of the evidence that such lack of notice of claim, lack of notice of suit, and lack of cooperation existed.

"20. Further, [Maryland Casualty] has sustained its burden of proof that the breach . . . caused [Maryland Casualty] substantial prejudice."

The Creeks challenge the trial court's finding that Maryland Casualty lost the opportunity to conduct its own investigation of the loss, to appraise the damages, and to determine responsibility for the damages. Specifically, the Creeks contend that Maryland Casualty had the opportunity to investigate, to set aside the default judgment, and to defend the claim *after* the Creeks notified the

company of the loss in August 1991, but declined to do so. The Creeks argue that Maryland Casualty's failure to pursue these opportunities prevents it from claiming that it was prejudiced. For support, the Creeks cite *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F. Supp. 1489 (D. Kan. 1995); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098 (D. Kan. 1994); and *Home Life Ins. Co. v. Clay*, 11 Kan. App. 2d 280, 719 P.2d 756, *rev. denied* 239 Kan. 693 (1986).

In *Home Life*, Home Life Insurance Company sued its former employee for forging checks belonging to the company and depositing them in his own bank account. Home Life also sued the employee's bank (Bank) for conversion. The Bank filed a third-party claim against Reliance Insurance Company, one of its bonding companies. Finding that the Bank had failed to comply with policy provisions requiring that it give notice of loss "as soon as practicable," the trial court granted the bonding company summary judgment. 11 Kan. App. 2d at 284. The Bank appealed and argued that there was no evidence that the bonding company had been prejudiced by the untimely notice. Citing and discussing several cases, the *Home Life* court stated:

"When the insured sustains a direct loss, the insurer's only recourse is against the thief. *However, when the loss will result from liability owed a third party, the insurer is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay.*

"[A] failure to satisfy the condition does not bar coverage unless the insurer can show prejudice. . . . *[W]e conclude that a failure to provide a compensated surety with timely notice of loss will not relieve the surety from liability on its bond unless the surety can show that it was prejudiced by the untimeliness.*" (Emphasis added.) 11 Kan. App. 2d at 288-89.

Similarly, in *Cessna*, the trial court denied summary judgment. Citing *Home Life*, the court reiterated the above principles and stated:

"[U]ntimely notice, even if a breach of a condition precedent to coverage, is not alone sufficient to excuse performance of the insurer or relieve the insurer of its obligation to provide coverage when coverage otherwise should be afforded. Kansas also requires a showing of actual prejudice as a result of the untimely notice. [Citation omitted.] Prejudice is not presumed and the burden is on the insurer to show that the prejudice is substantial. [Citations omitted.]" 900 F. Supp. at 1515.

"The court agrees with plaintiff that, under Kansas law, an insurer must show prejudice as to its ability to defend the underlying claim. The only Kansas case law arguably addressing the issue indicates that it is the defense of the underlying claim that is the proper focus in determining whether there has been substantial prejudice to an insurer as a result of an insured's breach. [Citation omitted.]" 900 F. Supp. at 1515-16 n.34.

*Home Life* and *Cessna* merely hold that an insurer must demonstrate prejudice in order to escape liability based upon its insured's failure to comply with notice requirements. This is undisputed. Significantly, neither *Home Life* nor *Cessna* analyzes what facts are sufficient to demonstrate prejudice.

Although arguably on point, the Creeks' third case, *Kling Motor*, does not support the Creeks' position. In *Kling Motor*, the plaintiff, Steven Hunt, obtained a default judgment against Kling Motor. After the judgment was obtained, Hunt's counsel notified Kling Motor's insurance company, Universal Underwriters Insurance Co. (Universal), that Kling Motor had been named as a defendant in a lawsuit, that a default judgment had been taken, and that Hunt would look to Universal to satisfy any monetary judgment entered against Kling Motor. The letter further advised Universal of a pending hearing to determine the amount of damages. Thereafter, the plaintiff served Universal with an order of garnishment. Universal denied that it owed anything to Kling Motor and argued that no coverage existed because Universal had been substantially prejudiced by Kling Motor's breach of the insurance policy's provisions requiring the insured to give timely notice to the insurer of any claim, lawsuit, or occurrence.

Agreeing that Universal had been substantially prejudiced by Kling Motor's breach of its duty to timely notify Universal of any claim, the *Kling Motor* court reasoned:

"By the time Universal was notified of the claim, liability had been determined and the claim had been reduced to a default judgment. Universal was precluded from asserting any affirmative defenses. Furthermore, the untimely notice prevented Universal from conducting any investigation into the alleged mechanical conditions of the tractors. Universal lost the opportunity to preserve any evidence of the alleged problems with the tractors. The late notice also eliminated Universal's ability to analyze the claim and determine what management approach it would adopt to resolve the claim; without the ability to analyze the claim, Universal

was precluded from undertaking any arms-length negotiations or settlement discussions regardless of whether coverage existed under the Universal policy. Clearly, the fact that Universal did not receive notice until after liability was determined and default judgment was entered against Kling Motor denied Universal the ability to defend Kling Motor against the imposition of liability. Universal was substantially prejudiced by the untimely notice." 841 F. Supp. at 1103-04.

Hunt argued that Universal was not prejudiced because it received notice before the court assessed damages. Mirroring the Creeks' arguments in the instant case, Hunt reasoned that Universal could have appeared at the damages hearing, contested damages, and petitioned the court to set aside the default judgment. 841 F. Supp. at 1104.

The *Kling Motor* court found this argument unpersuasive and emphasized that there was no guarantee that a court would set aside the judgment. For support, the court cited *Kimble v. Aetna Cas. and Sur. Co.*, 767 S.W.2d 846 (Tex. Ct. App. 1989) (prejudice resulted to the insurer by the change in its position brought about by the insured's failure to forward suit papers until after default judgment had been rendered, even though the option to file a motion for new trial was still available to the insurer), and *Reisman v. Delgado*, 117 Ill. App. 3d 331, 453 N.E.2d 902 (1983) (an insurer is prejudiced when it does not receive notice of a lawsuit until after entry of a default judgment even where the insurer receives notice within time to seek post-judgment relief, particularly where the judgment appears to be valid and no good cause is shown for granting relief from the judgment).

Because Harder failed to give Maryland Casualty notice of the loss and to inform it of the suit and default judgment taken against Harder and because this delay prejudiced Maryland Casualty's ability to defend against the Creeks' suit, Maryland Casualty has shown that it should be relieved of liability under the Creeks' judgment and garnishment.

The Creeks also argue that Maryland Casualty failed to demonstrate that it was substantially prejudiced by Harder's breach of the insurance contract's cooperation clause. The Creeks cite *Watson*, 227 Kan. 862, and *Boone v. Lowry*, 8 Kan. App. 2d 293, 657 P.2d 64, *rev. denied* 232 Kan. 875 (1983). The *Boone* court, citing

*Watson* and *Jameson v. Farmers Mutual Automobile Ins. Co.*, 181 Kan. 120, 309 P.2d 394 (1957), stated that in Kansas a breach of a cooperation clause will not relieve an insurer of liability unless the breach causes substantial prejudice to the insurer's ability to defend itself and that the insurer bears the burden of demonstrating such prejudice. 8 Kan. App. 2d at 299.

The cooperation provision of the insurance policy stated:

"(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident."

The Creeks argue that Harder's failure to respond to Maryland Casualty's letters requesting information and its reservation of rights letters is insufficient to demonstrate that Harder failed to cooperate and that Maryland Casualty suffered substantial prejudice. The trial court rejected this argument and found that Harder's breach of the cooperation clause *coupled with* its breach of the notice provisions resulted in substantial prejudice to Maryland Casualty. Distinguishing *Watson* and *Boone*, the trial court stated:

"*Watson v. Jones*, 227 Kan. 862, 610 P.2d 619 (1980) and *Boone v. Lowry*, 8 Kan. App. 2d 293, 657 P.2d 64 (1983) are the two leading Kansas cases with respect to breach of the cooperation clause in an insurance policy. However, the Court finds that both of those cases deal only with lack of cooperation by an insured. In both cases, the insured gave notice of the claim, as well as notice of the suit. The Court finds that in the case at bar [Maryland Casualty] was substantially prejudiced not only by the lack of cooperation of its insured but also by the lack of notice of the claim, as well as lack of notice of suit. The cumulative effect of these violations of Paragraph 4 of the Conditions in the policy establish that [Maryland Casualty] was substantially prejudiced."

We agree with the trial court. Because the trial court's determination that Harder's lack of cooperation prejudiced Maryland

Casualty is supported by substantial evidence, the Creeks' argument fails. See *Watson*, 227 Kan. at 870.

Affirmed.