NOT DESIGNATED FOR PUBLICATION

No. 117,797

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEREMY FISHER,
*Appellant*,

v.

ELIJAH MOORE, *Defendant*, and KEY INSURANCE CO.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed February 1, 2019. Affirmed.

*Melinda G. Young*, of Bretz & Young, L.L.C., of Hutchinson, for appellant.

*Arthur S. Chalmers*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

BUSER, J.:  This is an appeal of a garnishment action. Jeremy Fisher appeals from the district court's judgment, issued in accord with K.S.A. 60-721(a), denying his request for a garnishment against Key Insurance Company (Key). Fisher had served a garnishment order on Key seeking automobile liability insurance proceeds under a policy issued by Key covering the use of a pickup truck driven by Elijah Moore who was involved in a collision on October 19, 2011. At the time, Fisher was a passenger in the truck being driven by Moore when the vehicle was struck from the rear by a vehicle driven by Gage Apel. As a result, Fisher sustained back and neck injuries.

Fisher sued Apel claiming his negligence was the sole and proximate cause of Fisher's injuries. After settling with Apel's insurer, Fisher filed a personal injury lawsuit against Moore and was granted a default judgment when Moore did not file an answer and failed to inform his insurer, Key, of the lawsuit. After Moore was unsuccessful in setting aside the default judgment against him, Fisher obtained a garnishment order and served Key seeking the proceeds of Moore's insurance policy. Key answered, Fisher replied, and following an evidentiary hearing, the district court denied the garnishment and entered judgment in favor of Key.

The district court denied the garnishment because (1) Moore breached the insurance policy and, as a result, Key was substantially prejudiced; (2) contrary to Fisher's claim, Key was not estopped from denying insurance coverage to Moore because the insurance carrier properly and timely reserved its right to deny coverage to Moore; and (3) under the doctrine of unclean hands, it was unequitable for Fisher to assert estoppel under the circumstances.

Upon our review of the appellate record and briefs, we conclude that the district court did not err in granting judgment for Key and denying Fisher's request for garnishment.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Fisher was injured in an automobile collision on October 19, 2011. He was a passenger in a vehicle driven by Moore at about 60 miles per hour in a 60 miles per hour zone on U.S. Highway 54. Moore's vehicle was rear-ended by a vehicle driven by Apel who was allegedly traveling at a high rate of speed, estimated at 100 miles per hour. Fisher was transported to Wesley Medical Center for neck and back injuries.

2

Fisher filed a personal injury lawsuit against Apel. According to the district court's findings made at the garnishment hearing: "In the initial lawsuit, both [Fisher] and [Moore] testified in their [depositions] the other driver, Apel, was at fault for the accident. This testimony was supported by the statement of the eyewitness to the accident." Of note, Fisher testified that he thought there was nothing Moore could have done to avoid the impact of Apel's vehicle. For his part, according to the district court's findings, Apel "claimed that [Moore] stopped suddenly thereby causing the accident. This statement was made by Apel to the investigating officer at the time of the accident report. . . . No additional evidence of fault by [Moore] was uncovered during the discovery process."

On June 6, 2012, Fisher initiated settlement negotiations with Apel's insurance carrier stating: "In light of the rather clear liability and the injuries and damages incurred to date, we should be in a position to discuss settlement or to proceed with suit. Accordingly, we are willing to consider payment of [Apel's] policy limits." Fisher ultimately entered into a settlement agreement with Apel's insurance carrier for $100,000.

On October 1, 2012, Fisher's attorney wrote Key, demanding payment of Key's personal injury protection (PIP) benefits and full waiver of Key's PIP lien. Negotiations over the PIP benefits commenced.

About one year later, on October 17, 2013, Fisher filed a personal injury lawsuit against Moore claiming that the "sole and proximate cause of [Fisher's] damages was the recklessness of [Moore]." As found by the district court during the garnishment hearing: "This allegation was made against . . . Moore after [Fisher] had alleged fault against Apel consistent with the known facts, and consistent with [Fisher's] own statements."

Moore was served with the petition on January 28, 2014, while incarcerated in the Sedgwick County jail. He did not file an answer. Prior to the filing of the lawsuit, neither

3

Fisher nor his representative made a demand on Key or notified the insurance carrier that Fisher intended to file the personal injury lawsuit against Moore. On April 14, 2014, Fisher filed a motion for default judgment. That same day, the district court granted Fisher's motion and entered judgment against Moore in the amount of $433,500.

On June 2, 2014 Fisher sent a letter to Key demanding payment of its policy limits given the default judgment entered against its insured Moore. A second demand letter was sent on January 13, 2015. Key responded and notified Fisher that the matter was under investigation.

Key hired attorney Frank Hummer to represent Moore in an attempt to set aside the default judgment. According to the district court's findings in the garnishment proceeding: "Although Key . . . paid for Mr. Hummer's representation of Moore, Moore was Mr. Hummer's client." On February 19, 2015, Moore moved to set aside the default judgment. In support of his motion, Moore attached an affidavit that he was not served with Fisher's petition or summons at the jail and that he was not even in Kansas when he was supposedly served with process in the jail. Subsequent discovery controverted Moore's affidavit.

On June 10, 2015, Key sent Moore a letter acknowledging the report of the accident and the default judgment entered against him. As later found by the district court at the garnishment hearing, the letter "unequivocally" communicated to Moore that Key reserved the right to deny coverage due to his failure to comply with the provisions of his insurance policy. In particular, the letter from Key stated that Moore failed to notify Key of Fisher's lawsuit against him and, therefore, Moore breached the terms of his insurance policy.

In the letter, Key explained to Moore:

"You should also be advised that your failure to comply with the conditions of this policy may jeopardize your coverage under this policy and we reserve our rights to decline coverage for this reason. . . .

. . . .

"There may be other reasons why coverage may not apply and Key Insurance Company reserves the right to decline coverage for reasons other than those cited in this letter."

The district judge presiding over Moore's motion to set aside the default judgment, Judge Douglas Roth, ultimately denied the motion on December 22, 2015. The district court found that Moore was served with process while in the Sedgwick County jail and failed to answer the petition. Moore's affidavit claiming he did not receive service was found to be false. The district court found, however, that Moore proved that his defense would have been meritorious and that Fisher would not be prejudiced by reopening the lawsuit. Nevertheless, Judge Roth ruled that Moore's failure to answer was "willful and inexcusable."

Fisher served an order of garnishment on Key in October 2016. See K.S.A. 2017 Supp. 60-731. Key responded, Fisher replied, and Key moved for denial of the order of garnishment and judgment against Fisher. See K.S.A. 60-721(a); K.S.A. 2017 Supp. 60-736; K.S.A. 2017 Supp.60-738.

The district court held an evidentiary hearing. It found that (1) Moore had breached the insurance policy provisions and, as a result, Key was substantially prejudiced by Moore's failure to notify Key of the claims against him; (2) Key was not estopped from denying insurance coverage to Moore because the insurance carrier properly and timely reserved its right to deny coverage to Moore; and (3) the doctrine of

5

clean hands precluded Fisher's estoppel claim. Accordingly, the district court denied the garnishment and entered judgment for Key.

Fisher timely appeals.

WAS THERE SUFFICIENT EVIDENCE THAT KEY WAS SUBSTANTIALLY PREJUDICED?

In the district court, Key opposed the garnishment order based, in part, on its contention that the insurance carrier was not obligated to pay Fisher the policy limits of $25,000 because its insured, Moore, breached conditions of the policy which required that he provide Key with notice of the lawsuit and cooperate with its defense. The district court agreed with Key's legal position.

For his first issue on appeal, Fisher asserts the district court erred because even if Moore failed to comply with the obligations of the insurance contract, there was insufficient evidence that Key was substantially prejudiced as a result.

In its order of judgment in favor of Key, the district court made the following legal conclusions with regard to this issue:

> "Key Was Substantially Prejudiced by Defendant's Failure to Provide Notice of the Claim
> "Key has proven it was substantially prejudiced by the inability to present a defense in this case due to Mr. Moore's breach of the insurance contract. Key has established through the testimony of a senior claims advisor and the attorney assigned to defend the initial action that the claim would most likely have failed at trial or at least would have been substantially reduced under a comparative fault theory. Judge Roth also determined in his review of the evidence that Key would [have had] a meritorious defense in the case. The inability to present that defense has caused irreparable harm to Key. Key has sustained its burden on this issue."

6

Substantial competent evidence is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' [Citations omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73-74, 350 P.3d 1071 (2015). When a trial court decision is challenged for insufficiency of evidence or for being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

Our court "accept[s] as true the evidence and inferences supporting the district court's findings and disregard[s] any contrary evidence or inferences." *Ortiz v. Biscanin*, 34 Kan. App. 2d 445, 454, 122 P.3d 365 (2004) (citing *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 497, 961 P.2d 696 [1998]). A finding of fact is only set aside if it is clearly erroneous. K.S.A. 2017 Supp. 60-252(a)(5). Conclusions of law are considered under an unlimited review. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

Kansas law provides that if an insured party breaches a condition precedent to coverage—such as failing to notify the insurer of a claim against the insured—the breach alone does not relieve the insurer of its obligation to provide coverage when it otherwise should be afforded. See *Geer v. Eby*, 309 Kan. ___, Syl. ¶ 1, No. 115,948, filed 2019 WL 255023 (Kan. 2019); *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 759, 71 P.3d 1097 (2003). Additionally, actual substantial prejudice must be shown as a result of the contractual breach by the insured:

> "'Kansas also requires a showing of actual prejudice as a result of the untimely notice. *Home Life Ins. Co. v. Clay*, 11 Kan. App. 2d 280, 286-87, 719 P.2d 756 (1986). Prejudice is not presumed and the burden is on the insurer to show that the prejudice is substantial.

7

*Hunt v. Kling Motor Co.*, 841 F.Supp. 1098 (D. Kan. 1993); *Feld Car & Truck Leasing*, 517 F.Supp. [1132,] 1135-36 [(D. Kan. 1981)]; *Security Nat'l Bank of Kansas City v. Continental Ins. Co.*, 586 F.Supp. 139 (D. Kan. 1982). "When the loss will result from liability owed a third party, the insured is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay." *Clay,* 11 Kan. App. 2d at 288, 719 P.2d at 763. Generally, whether an insurer has been prejudiced from the failure to provide timely notice is a question of fact, but where the relevant facts are not in dispute it may be determined as a matter of law. *F.D.I.C. v. Oldenburg,* 34 F.3d 1529, 1547 (10th Cir.1994); *Feld Car & Truck Leasing,* 517 F.Supp. at 1135; *Goff v. Aetna Life & Casualty Co.*, 1 Kan. App. 2d 171, 178, 563 P.2d 1073, 1079 (1977).'" *AT&SF Ry. Co.*, 275 Kan. at 759 (quoting *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F. Supp. 2d 1489, 1515-16 [D. Kan. 1995]).

Fisher does not contest that Moore breached the insurance policy by failing to notify Key of the lawsuit served on him and failing to cooperate with Key by lying about not being served. Key's policy with Moore clearly stated that Moore had a duty to notify Key of any claims filed against him and cooperate with the insurance carrier. Indeed, Judge Roth ruled at the hearing on Moore's motion to set aside the default judgment that "[d]iscovery has shown that [Moore] was served with process on January 28, 2014, in the Sedgwick County Jail and his sworn affidavit to the contrary was false." Moore's failure to notify Key of Fisher's lawsuit and then lying about not being served with process was a breach of a condition precedent to insurance coverage.

Fisher's principal complaint is that Key failed to show substantial prejudice from Moore's failure to comply with the notice and cooperation provisions of the insurance policy. As mentioned earlier, an insurer contending that its insured's breach of policy terms precludes coverage carries the burden of showing more than possible prejudice. The insurer must show that if the policy "had not been breached there was a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor. [Citations omitted.]" *Boone v. Lowry*, 8 Kan. App. 2d 293, 302, 657 P.2d 64 (1983).

Fisher disputes that Key was substantially prejudiced. In particular, he argues that Key was put on notice of a potential claim against Moore as of October 19, 2011, the date of the vehicular collision, because Apel informed a police officer at the scene that Moore stopped suddenly prior to impact. But Key also knew of the underlying circumstances of the accident and sworn testimony by Fisher and Moore that Apel was the sole and proximate cause of the rear-end collision. Given these facts, Key was not put on notice that Fisher would directly controvert his earlier testimony and later claim personal injury damages based on Moore being the sole and proximate cause of the collision.

In addition, Fisher asserts that Key had notice of a potential claim in January 2012 when Fisher first demanded payment of Key's PIP benefits. The record reflects, however, that during the period of negotiation regarding the PIP benefits Key was not informed of Fisher's intention to file a personal injury claim against Key. The uncontroverted evidence shows that Key's first knowledge of Fisher's claim against Moore was more than two years later, on June 2, 2014, when Fisher sent Key a copy of the default judgment against Moore and demanded payment of the limits of the insurance policy.

Recently, our Supreme Court in *Geer* directly addressed whether an insurance carrier's knowledge of a *potential* lawsuit shows that the carrier could not have been substantially prejudiced because its insured did not comply with the notice of suit provisions in the insurance policy. Our Supreme Court held:

> "The purpose of the duty to give notice of suit is to 'enable the insurer to locate and
> defend the suit.' *AT&SF Ry. Co.*, 275 Kan. at 760. Although actual notice of the suit to
> [the insurance carrier] from someone other than [the insured] could establish a lack of
> prejudice, notice of a *potential* suit cannot." *Geer*, 2019 WL 255023, at *10.

Contrary to Fisher's assertion, there was no evidence that Key knew of the lawsuit prior to being informed of the default judgment. Moreover, *Geer* teaches that even if Key

9

had anticipated the potential filing of the lawsuit this expectation would not have diminished the insurance carrier's substantial prejudice by not having actual knowledge of the filing of the lawsuit prior to the default judgment. See 2019 WL 255023, at *10.

The critical issue raised at the garnishment proceeding was whether, as a result of Moore's breach, Key was substantially prejudiced in defending against Fisher's personal injury claim. At the garnishment hearing, Key presented testimony from Leonard Gragson, vice-president of claims for Key, and Hummer, Moore's attorney, who opined that Moore's defense against Fisher would have been meritorious and likely to prevail. These opinions were supported by evidence that discredited Fisher's later claim that Moore was the sole and proximate cause of Fisher's damages. For example, in his deposition, Fisher claimed there was nothing Moore could have done to avoid being rear-ended by Apel's vehicle. Moreover, Apel was traveling at an estimated 100 miles per hour when he struck the rear of Moore's vehicle on the highway.

In concluding that Key had shown substantial prejudice, the district court not only highlighted the testimony of Hummer and Gragson, but it also referenced Judge Roth's findings at the earlier hearing that

> "[Moore] has established he has a meritorious defense (i.e., he is not at fault and certainly was not the 'sole and proximate cause' of [Fisher's] damages as alleged in [Fisher's] misleading petition).
> . . . .
> ". . . Had [Moore] met his statutory obligation to answer the lawsuit and had he raised the issue of the apparent misleading allegations contained in [Fisher's] petition, the judgment could have been averted."

Fisher counters that the district court gave improper weight to the testimony of Gragson and Hummer. But we do not reweigh the evidence or pass on the credibility of the witnesses. *Duckworth*, 293 Kan. at 407.

The district court's legal conclusion is consonant with Supreme Court precedent. See *Geer*, 2019 WL 255023, at *13 ("When our focus is placed, as it must be in this case, squarely on the purpose behind notice-of-suit provisions—to enable the insurer to locate and defend the suit—prejudice to [the insurance carrier] as a matter of law is evident. *AT&SF Ry. Co.*, 275 Kan. at 760."). See *Creek v. Harder Const.*, 25 Kan. App. 2d 232, 238, 961 P.2d 1240 (1998) (listing cases finding prejudice to insurer for insured's failure to forward suit papers until after default judgment); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1101 (D. Kan. 1993) (insurer prejudiced from lack of notice of suit, no opportunity to appear, defend against liability, cross-examine witnesses, or present its own evidence), *aff'd Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995).

Upon our independent review of the record, we are convinced there was substantial competent evidence that Key was substantially prejudiced by the insurance carrier's inability to present a defense in Fisher's personal injury case due to Moore's breach of the insurance policy which resulted in the default judgment. We find no error in the district court's findings of fact or conclusions of law relating to this issue.

WAS KEY ESTOPPED FROM DENYING INSURANCE COVERAGE TO MOORE?

For his second issue on appeal, Fisher contends the district court erred in finding that he did not have standing to assert a claim of estoppel. Yet, in his briefing Fisher acknowledges that "upon closer examination, it becomes clear that the district court did not rule that [Fisher] lacked standing to make the estoppel argument." For its part, Key acknowledges the district court ruled that Fisher had standing to assert equitable estoppel under these case facts. Key also admits that it did not cross-appeal this adverse legal ruling and, as a result, the district court's decision on standing is not properly before us on appeal.

Upon our review of the district court's journal entry and the briefing by both parties, we understand the district court's ruling to be that, contrary to Fisher's claim that Key was estopped from denying coverage to Moore, Key was not estopped because it properly and timely reserved its right to deny insurance coverage to Moore. Accordingly, we will not consider the issue of standing but we will only review Fisher's complaint that the district court erred in ruling that Key was not equitably estopped from denying insurance coverage to Moore, and by extension, to Fisher.

In relevant part, the district court made the following findings regarding this issue:

"In this case, [Fisher] has attempted to place himself in the position of [Moore] so that he can assert certain rights against Key, the insure[r]. [Fisher] is seeking to collect a default judgment against Key, the insure[r], even though Mr. Moore failed to comply with the terms of the insurance contract. Plaintiff argues Key is estopped from presenting this defense. Plaintiff is alleging Key's Reservation of Rights letter sent to Moore was not proper and was not delivered to [Moore] in a timely manner.

"Key is arguing [Moore] had no rights to coverage because of his failure to comply with the terms of the contract therefore rendering no duty by Key to provide coverage under the contract for insurance with [Moore]. Key also alleges the Reservation of Rights letter was submitted to Mr. Moore timely.

"In a garnishment the law is clear; a Plaintiff stands in the shoes of the garnishee and, therefore, can have no greater right to recover than that of [Moore]. In this case, the Reservation of Rights letter was provided to the defendant Elijah Moore once Key had knowledge of the default judgment and attempted to provide representation of [Moore]. [Moore] was provided with competent representation at all stages of the proceedings and has not been prejudiced due to the content or timing of the Reservation of Rights letter. Therefore there is [no] basis for asserting estoppel by either [Moore] or [Fisher] as there is no right to coverage under the contract."

Appellate courts ordinarily apply a bifurcated standard of review to garnishment orders. *Geer*, 2019 WL 255023, at *6. In this appeal, there is no genuine issue as to any material fact. When reviewing a mixed question of fact and law, the district court's

factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Of critical importance in this case is that "interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009). "Regardless of the trial court's construction of a written contract, an appellate court may construe it and determine its legal effect." *Byers v. Snyder*, 44 Kan. App. 2d 380, 385, 237 P.3d 1258 (2010) (citing *City of Arkansas City v. Bruton*, 284 Kan. 815, 829, 166 P.3d 992 [2007]).

The question before us is whether the June 10, 2015 reservation of rights letter sent by Key, the garnishee, was adequate and timely to protect the insurance carrier from the bar of waiver or estoppel raised by Fisher, the garnishor, standing in the shoes of Moore. If so, Key was legally entitled to defend against the garnishment by pleading its policy defense of noncoverage.

We begin the analysis with the rule that "[i]n garnishment proceedings the creditor takes the place and stands in the shoes of his debtor, taking only what the latter could enforce." *Harpster v. Reynolds*, 215 Kan. 327, 330, 524 P.2d 212 (1974).

> "It is a well-established rule that where an insurance company under a liability policy takes charge of the only defense which may then be imposed to any action on which liability rests . . . , it will be estopped from thereafter questioning the claim because . . . of a breach of a noncoverage clause, unless it gives notice of its right to set up the defense of noncoverage under an adequate and proper nonwaiver and reservation of rights notice to the insured. [Citations omitted.]" *Henry v. Johnson*, 191 Kan. 369, 376, 381 P.2d 538 (1963).

Unless an insurer under a liability policy gives notice of its right to set up the defense of noncoverage under an adequate and timely nonwaiver and reservation of rights notice to the insured, it will be estopped from raising a defense against a proper claim against it based on the assertion that the terms of the policy were breached. See *Gilley v. Farmer*, 207 Kan. 536, 543-44, 485 P.2d 1284 (1971); *Johnson v. Westhoff Sand Co.*, 31 Kan. App. 2d 259, 276, 62 P.3d 685 (2003); *Farmco, Inc. v. Explosive Specialists, Inc.*, 9 Kan. App. 2d 507, 515, 684 P.2d 436 (1984). In this regard, an insurer should state its desire to limit its liability using clear and concise language in the policy or related papers. *Henry*, 191 Kan. at 376.

*Adequacy of the Reservation of Rights Letter*

We will first consider the adequacy of the June 10, 2015 reservation of rights letter sent by regular and certified mail to Moore at the Hutchinson Correctional Facility. In the letter, Key referenced the automobile collision of October 19, 2011, and its continuing investigation into the accident facts and insurance coverage issues. The letter stated:

> "You were served a summons on January 28, 2014 indicating that Jeremy Fisher filed a lawsuit against you for the injuries he sustained in the accident on October 19, 2011. You never notified Key Insurance Company of the lawsuit which was filed against you and as you can see from the policy language below you are required to deliver to us any correspondence or legal papers you receive.
>
> "Investigation into this matter continues and you should be aware that any activity on the part of any representative of Key Insurance Company shall not constitute a waiver of our rights under this policy, including our right to decline coverage. You should also be advised that your failure to comply with the conditions of this policy may jeopardize your coverage under this policy and we reserve our rights to decline coverage for this reason."

The letter quoted from the insurance policy which provided that Moore must cooperate with Key by delivering to the insurance carrier "within 72 hours" any

14

correspondence or legal papers relating to a claim or suit. The letter concluded by noting that "[t]here may be other reasons why coverage may not apply and Key Insurance Company reserves the right to decline coverage for reasons other than those cited in this letter." Finally, Moore was informed that he had the right to discuss the letter with an attorney of his choice and at his expense.

The district court found the reservation of rights letter sent to Moore communicated "unequivocally" that Key "reserved the right to deny coverage due to [Moore's] failure to comply with provision of his policy."

Fisher disagrees with the district court's finding that Key made a sufficiently clear disclaimer of liability. For its part, Key contends the language of the letter was sufficient, especially given the fact that, as of the date of the letter, Judge Roth had not yet ruled on Moore's motion to set aside the default judgment. As a result, the critical controverted question of whether Moore, in fact, had complied with his coverage obligation to notify Key of Fisher's lawsuit was still unresolved.

As detailed in the next section, in support of Moore's motion to set aside the default judgment, Moore prepared an affidavit that denied Fisher's claim that he was served with the petition while in the Sedgwick County Jail. This affidavit was executed on February 13, 2015. By late May 2015, however, Moore had been deposed and confronted with evidence that he had lied under oath about not being served with process. This development clearly gave notice to Key that its insured may not have complied with his notification of lawsuit obligation under the insurance policy. Although the critical coverage question was still unresolved because Judge Roth had not yet ruled on Moore's motion, Key sent Moore its reservation of rights letter about one month following Moore's deposition.

Key's letter clearly informed Moore that it reserved the right to deny coverage due to Moore's breach. The letter also detailed the policy provisions that had been breached. Moreover, Moore was advised that he could retain independent counsel. Under these circumstances, we are persuaded that the language in the June 10, 2015 letter was adequate to inform Moore that Key reserved its right to decline coverage for his noncompliance with the specified insurance policy provisions.

Fisher relies on *Henry* in support of his position that Key's reservation of rights letter was inadequate. In *Henry,* a garnishment case similar to the case on appeal, our Supreme Court held against the insurance carrier because the nonwaiver and reservation of rights language in that case was insufficient. See 191 Kan. at 377.

In *Henry*, the insurance carrier's letter advised the insured that the carrier was not waiving any of its rights or obligations under the policy by undertaking investigation of the vehicular accident and related claims, settlements, or suits, including the default judgment already entered against its insured. The letter stated that the reservation was being made because the insured failed to comply with policy conditions "'Notice of Claim or Suit'" and "'Assistance and Cooperation of the Insured and for other reasons.'" 191 Kan. at 370.

Of particular importance to our Supreme Court, however, was the fact that the last paragraph of the letter informed the insured that the reservation of rights did not deprive him of any rights he may have against the carrier. See 191 Kan. at 377. In the Supreme Court's view, this language was confusing and taken together with the rest of the contents of the letter did not constitute a clear disclaimer of liability and notice of the insurer's reservation of rights to assert the defense of noncoverage:

> "[W]hile the first two paragraphs of the reservation purported to advise the insured that
> the insurer was attempting in some manner to reserve something when it sought to set

16

aside the default judgment and answer on the merits, *the third paragraph purport*[*ed*] *to restore to the insured any rights he may have under the policy by advising him that he was not deprived of 'any rights you may have against this company*.'" (Emphasis added.) 191 Kan. at 377.

Our Supreme Court found the reservation of rights language was insufficient on its face. 191 Kan. at 378.

*Henry* is notably distinguishable from the case on appeal because here there is no language similar to the third paragraph of the letter sent by Henry's insurer. In this case, Key's letter expressly stated that it was reserving its right to deny coverage. The letter was clear and concise and stated that due to Moore's breach of specified policy provisions, Key was not waiving its rights under the policy and reserved the right to deny coverage. Importantly—and unlike the letter in *Henry*—the Key letter did not confuse this reservation of rights by reaffirming that the reservation did not deprive Moore of any rights he may have against Key.

In sum, we conclude the district court's findings of fact were supported by substantial competent evidence. Moreover, we find no error in the district court's legal conclusion that the reservation of rights letter was adequate and proper. The language contained in the letter allowed Moore "to make an informed decision about 'whether to consent to the assumption of his defense and the control of his lawsuit by the carrier, or to take another course.' [Citation omitted.]" See *Becker v. The Bar Plan Mut. Ins. Co.*, 308 Kan. 1307, 1317, 429 P.3d 212 (2018).

*Timeliness of the Reservation of Rights Letter*

Next, we consider whether Key's reservation of rights letter was timely. According to Fisher, because the letter was "sent roughly a year after Key received notice of the default that had been entered against its insured, the letter was plainly untimely." Key

17

counters that it did not send the letter to Moore "until it learned that Moore had admitted, in his deposition taken on June 8, 2015, that he had been served with the Petition and summons in this suit, contrary to his prior affidavit." Key also asserts there was no prejudice by this delay.

Timeliness of a reservation of rights letter depends on the particular facts of the case. See *Becker*, 308 Kan. at 1318; *Continental Ins. Co. v. Wilco Truck Rental, Inc*., No. 58,541, unpublished opinion filed November 6, 1986 (Kan. App.).

As detailed in the Factual and Procedural Background, several events and dates are relevant to the analysis of the timeliness issue:

- January 28, 2014    Moore served with Fisher's petition and process.
- April 14, 2014    Fisher's motion for default judgment filed and granted.
- June 2, 2014    Fisher sends a demand letter to Key.
- January 13, 2015    Fisher sends a second demand letter to Key.
- February 13, 2015    At Hummer's request Moore prepares affidavit.
- February 19, 2015    Moore (by Hummer) files motion to set aside default judgment.
- June 10, 2015    Key sends Moore reservation of rights letter.
- December 22, 2015    District Court denies Moore's motion to set aside default judgment.

Fisher focuses his argument on the fact that Key was informed of Moore's default judgment about a year prior to the insurance carrier mailing its insured the reservation of rights letter. The facts show that after Key received notice of the default judgment against Moore, it retained Hummer to personally represent Moore in the litigation. Hummer was not retained to represent Key. During the eight months that elapsed from Key's receipt of

18

Fisher's first demand letter with the order of default judgment, until shortly before Moore executed his affidavit, Hummer testified that he was unable to locate Moore. According to Hummer, it was only shortly before February 13, 2015 (when Moore executed his affidavit), that Hummer was able to locate Moore who was incarcerated in jail.

In the affidavit, Moore swore in relevant part: "It is my understanding that [Fisher] claims to have served me with summons and petition at [the Sedgwick County Jail] on January 28, 2014 at 9:30 a.m. . . . I was never served with summons and petition at the jail." In fact, Moore swore that on January 28, 2014, he was not even in the state of Kansas. Moore later testified at the garnishment hearing that he had confused Fisher's petition and summons with paperwork relating to his criminal case. As a result, the averments in his affidavit, according to Moore, were "true to my knowledge" at that point in time.

At the garnishment hearing, Gragson testified that based on the contents of Moore's affidavit, there was no apparent violation of the notification of suit provision to justify informing Moore that he was in breach of the insurance policy. Shortly after obtaining the affidavit, on February 19, 2015, Hummer filed Moore's motion to set aside the default judgment, in part, based on Moore's sworn statement that he had not been served with process. Moore was subsequently deposed in May or June 2015, whereupon he was confronted with evidence that, contrary to his affidavit, he was, in fact, served with Fisher's lawsuit at the jail. Shortly thereafter, on June 10, 2015, Key sent Moore its reservation of rights letter.

In summary, Key sent Moore its reservation of rights letter four months after Moore executed his false affidavit, within one month after his deposition which revealed the affidavit to be false, and six months prior to Judge Roth's ruling that Moore's affidavit was, in fact, false and that Moore had been served with Fisher's lawsuit but did not inform Key.

19

Given this time frame, we next apply Kansas law regarding timeliness in matters of reservation of rights letters. Recently, our Supreme Court provided guidance regarding an insurance carrier's responsibility to inform its insured of the carrier's reservation of rights in a timely manner:

> "In many cases, the insurer reserves its rights contemporaneously or almost contemporaneously with its assumption of its insured's defense. While we decline to make a bright line rule requiring such, a court must nevertheless consider that
>
> "'the insured must be fairly and timely informed of the insurer's position. That information should include the basis for the position taken by the insurer. Only then is the insured in a position to make his choice as to the course to pursue in protecting himself. The insured may or may not wish to permit the insurer to carry on his defense under its contract obligation to do so. We think that is the import underlying *Henry v. Johnson*[, 191 Kan. 369]. (See annotation and cases cited at 38 A.L.R. 2d 1148 and A.L.R. 2d Later Case Service; also 7A Appleman, Insurance Law and Practice [1962] § 4694.)' *Bogle* [*v. Conway*], 199 Kan. [707,] 713[, 433 P.2d 407 (1967)].
>
> "In response to the carrier's argument that often the insurer may not know until conclusion of the litigation whether it is liable or not, the *Bogle* court stated:  'We have no quarrel with this theory provided the insured is adequately and *timely informed* of the insurer's position.' 199 Kan. at 714." *Becker*, 308 Kan. at 1318.

We are persuaded that Key's reservation of rights letter was sent in a timely manner. Key's first notice of Fisher's personal injury lawsuit was about one year prior to Key sending the letter to Moore. During the eight months after Key had notice of the default judgment, Key retained Hummer to represent Moore's legal interests and attempted to locate the insured. Upon locating Moore, Key's investigation—which resulted in preparation of Moore's affidavit—revealed that he had not been served with process, an obvious defense to the lawsuit. Only upon learning of later evidence directly controverting Moore's affidavit did Key have a factual basis to believe that its insured breached the insurance policy. Within a month of this discovery, the reservation of rights letter was sent to Moore.

Moreover, under the unique circumstances of this case, Moore's motion to set aside the default judgment had not yet been argued, which allowed Moore the opportunity to decline Key's legal representation and obtain separate counsel. Moore opted to continue with Hummer's representation. Six months after the reservation of rights letter was sent to Moore, Judge Roth ruled adversely against Moore.

Given this factual scenario, we conclude that Moore was timely informed of his insurance carrier's position which allowed him to choose his legal course, continue with Hummer's representation, and protect his legal position in attempting to set aside the default judgment.

Moreover, the district court found that Moore was not prejudiced by any delay in receiving the reservation of rights letter: "The defendant was provided with competent representation at all stages of the proceedings and has not been prejudiced due to the content or timing of the Reservation of Rights letter." On appeal, Key emphasizes this lack of prejudice. Fisher does not favor us with any particularized claim of prejudice; however, our Supreme Court has advised that "where an insurer assumes the defense of an insured, this court has held that once reliance has been established, prejudice to the insured will be assumed." *Becker*, 308 Kan. at 1316.

We observe that it was in the joint legal interest of both Moore and Key to set aside the default judgment, and Hummer's efforts in this regard appear to have been faithful to Moore without any partiality towards Key. At the time Key learned of the evidence indicating a noncoverage issue and reserved its rights, the hearing on Moore's motion had not yet occurred and some six months later a decision was rendered. The record shows that Moore never retained independent counsel but chose to permit Key to represent him in defense of the default judgment. All things considered, we conclude the district court did not err in ruling that the reservation of rights letter was timely sent to Moore.

21

For his third issue on appeal, Fisher contends the district court erred in applying the unclean hands doctrine and, as a result, ruling that Fisher was precluded from asserting equitable estoppel even if estoppel was appropriate under the facts of this case. Given our holdings with regard to the first two issues presented on appeal, we decline to review this alternative basis for the district court's judgment.

Finally, after this appeal was submitted to our court, Key filed a motion for appellate attorney fees under Supreme Court Rule 7.07(b)(1) and 7.07(c) (2019 Kan. S. Ct. R. 50). Fisher filed a response in opposition. In essence, Key asserts that Fisher's appeal is frivolous. We disagree. Keys' motion for appellate attorney fees is denied.

The district court's judgment is affirmed.